UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| CANADIAN STANDARDS ASSOCIATION d/b/a CSA GROUP,<br><br>     Plaintiff,<br><br>v.<br><br>GOLDEN DRAGON ASSOCIATION, INC. d/b/a GOLDEN LIGHTING,<br><br>     Defendant.<br>_____/ | CASE NO.:<br><br>COMPLAINT FOR TRADEMARK INFRINGEMENT, UNLAWFUL IMPORTATION OF INFRINGING GOODS, AND UNFAIR COMPETITION<br><br>JURY TRIAL REQUESTED |

COMPLAINT

Plaintiff, Canadian Standards Association, hereby brings the present action and alleges as follows:

INTRODUCTION

1. This is an action for trademark counterfeiting, trademark infringement, unlawful importation of infringing goods and unfair competition.

2. Canadian Standards Association seeks permanent injunctive relief, damages, costs, and attorneys' fees as authorized by the Lanham Act and Florida's common law.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, as amended, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1331, 1338(a-b) and 1367.

4. Venue is proper within the Middle District of Florida pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

### Plaintiff

5. Canadian Standards Association d/b/a CSA Group ("CSA Group" or "Plaintiff"), is a not-for-profit association duly organized and existing under the laws of Canada since January 21, 1919, with its principal place of business in Toronto, Ontario. Through its wholly owned subsidiary, CSA Group also has a facility in Independence, Ohio. CSA Group is dedicated to the development of consensus standards in the areas of safety, quality and performance, as well as providing conformity assessment services, including product certification and quality system registration, to its own and other international standards.

### Defendant

6. Defendant, Golden Dragon Association, Inc. d/b/a Golden Lighting and goldenlighting.com ("Golden Dragon"), is a Florida corporation whose principal

place of business is 2851 Industrial Plaza Drive, Tallahassee, FL 32301, which does business in Florida and this District.

## CSA GROUP'S WORLDWIDE CERTIFICATION MARKS

7. CSA Group is a partner and advisor to entities around the world dedicated to advancing consumer safety. Since 1944, CSA Group has been a leader in the development and increase of standards to ensure the safety and protection of the public by continuously engaging in the examination and testing of products, materials, devices, and equipment with respect to hazards affecting life and property.

8. CSA Group has developed and maintained over 3,000 codes and standards for safety. The standards CSA Group has developed and its testing to such standards are represented by CSA Group's certification trademarks, which are widely recognized by manufacturers who strive to comply with those standards, distributors who recognize the benefits of CSA-certified products, retailers who buy and sell those products, and the general consuming public who purchase, use and rely on CSA-tested and certified products. The CSA Marks tell potential customers and users that a product has been evaluated by a formal process – involving examination, testing and follow-up inspection – and that it complies with applicable standards for safety and performance.

9. CSA Group recognizes the complexities of safety certification standards in today's world, and continues to expend a significant amount of resources ensuring

sufficient public safety industry standards by hindering the influx of counterfeit goods entering the public marketplace.

10. Focusing its presence in key health and safety markets, CSA Group certifies a wide variety of consumer electronics for distribution in the United States, including but not limited to light fixtures, wiring, and related products,

11. CSA Group is the owner of numerous United States certification trademarks, including but not limited to Registration No. 967,896 and Registration No. 971,065 as set forth below (collectively, the "CSA Marks"), for use in connection with industrial and domestic goods.

| Mark | Registration Number | Date of Issuance | Class |
|---|---|---|---|
| (CSA logo) | 967,896 | September 4, 1973 | A |
| CSA | 971,065 | October 16, 1973 | A |

12. The above registrations of the CSA Marks are valid and subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CSA Marks constitute *prima facie* evidence of their validity and Plaintiff's exclusive right to use the CSA Marks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the above United States Registration Certificates are attached hereto as aggregate Exhibit 1.

13. The CSA Marks have been used exclusively and continuously by Plaintiff for over seventy years and never been abandoned. Plaintiff continues such usage worldwide, as better evidenced by the representative index attached hereto as Exhibit 2.

14. Plaintiff has built substantial goodwill in the CSA Marks. As a result, the CSA Marks are both famous marks and valuable assets. CSA Group has extensively advertised, promoted and used the CSA Marks throughout the world, including the United States. By reason of such advertising, promotion and use, the CSA Marks have become well known to the public as distinguishing the products certified by the Plaintiff to conform to its standards from those that are not tested and certified by CSA Group. The presence of the CSA Marks signify that a particular product has been tested and certified to conform to a certain standard of safety, thereby distinguishing that product from products that have not undergone CSA Group's testing and certification services.

15. CSA Group's right, title and interest in and to the CSA Marks include, without limitation, the exclusive right to use the CSA Marks in association with the products and/or services with which they are certified, and the right to authorize and/or preclude others regarding the same. Upon certifying a product, CSA Group specifically instructs the manufacturer as to how the CSA Mark is to be used in connection with that product.

16. Unauthorized use of the CSA Mark can enable unsafe or otherwise deficient products to gain widespread access to the market, placing consumers at direct risk of exposure and increasing distributors' and retailers' risks of legal action.

## DEFENDANT'S UNLAWFUL CONDUCT

17. Defendant is in the business of importing, distributing, offering for sale, and selling residential lighting fixtures.

18. Upon information and belief, Defendant imports such lighting fixtures from China and then distributes them downstream in the United States via an expansive network of physical distributor locations across the United States as well as numerous online platforms, including but not limited to its commercial website located at goldenlighting.com ("Commercial Site") (see Exhibit 3); social media accounts including Facebook and Twitter; content-sharing websites including YouTube and Pinterest; and third-party sales platforms such as Amazon.com, Houzz.com, Walmart.com, Build.com, Wayfair.com, 1stoplighting.com, hayneedle.com and Overstock.com (individually and collectively, "Online Distributors").

19. Defendant has imported, transported, distributed, sold and offered for sale light fixtures which incorporate and/or utilize counterfeit wiring or other electrical components bearing one of more unauthorized copies or simulations of the CSA Marks (the "Infringing Light Fixtures").

20. Between October 26, 2017 and January 19, 2018, the United States Customs and Border Protection ("Customs") seized nine (9) shipments of Infringing Light Fixtures imported by Defendant (the "Seized Shipments") under the following Customs Case Numbers:

   a. 2018-1803-000024-01
   b. 2018-1803-000033-01
   c. 2018-1803-000058-01
   d. 2018-1803-000059-01
   e. 2018-1803-000065-01
   f. 2018-1803-000095-01
   g. 2018-1803-000099-01
   h. 2018-1803-000106-01
   i. 2018-1803-000110-01

Copies of the written notices from Customs to CSA Group concerning the Seized Shipments are attached as Exhibit 4. The Seized Shipments were taken into custody by Customs when the Defendant attempted to import the Infringing Light Fixtures through the Port of Jacksonville, Florida.

21. The Seized Shipments consisted of over 5,760 Infringing Light Fixtures, which had a retail value of over one million dollars. Photographs of samples of the seized Infringing Light Fixtures are attached hereto as composite Exhibit 5.

22. Defendant or its agent received written notice of CBP's initial detention of the Seized Shipments as early as October 10, 2017.

23. Defendant continued to sell, offer for sale, distribute, and market Infringing Light Fixtures after receiving actual notice of the Seized Shipments from Customs. On or about November 21, 2017, Defendant sold Infringing Light Fixtures

through Walmart.com and hayneedle.com. A photograph of a light fixture purchased through from hayneedle.com through the Walmart.com online marketplace on this date is attached. See Exhibit 6.  While the Infringing Light Fixture was sold through hayneedle.com and Walmart.com, the order was fulfilled directly by the Defendant.

24. Between January 31, 2018 and May 30, 2018, Defendant received formal notice from CBP of its determination that the Seized Shipments consisted of and/or contained counterfeit CSA product and that the Seized Shipments were subject to forfeiture pursuant to 19 U.S.C. §1526(e).

25. Through these Notices Defendant was put on notice of its right to file a petition with CBP for an administrative review of the forfeiture decision or alternatively, file a claim and bond with CBP so as to have the U.S. Attorney institute judicial forfeiture proceedings concerning the Seized Shipments. Notwithstanding receipt of these Notices Defendant took no action to challenge or refute CBP's determination that the Seized Shipments contained counterfeit CSA product.

26. The U.S. Department of Homeland Security subsequently entered Declarations of Administrative Forfeiture as to each of Seized Shipments based on CBP's determination that each of the Seized Shipments contained unauthorized product bearing counterfeit CSA marks which were imported in violation of 19 U.S.C. §1526(e). Sample Declarations of Administrative Forfeiture entered against the Defendant with respect to the Seized Shipments are attached collectively as Exhibit 7.

27. Defendant continued to sell, offer for sale, market, and advertise the Infringing Light Fixtures in 2018. On or about July 3, 2018, an Infringing Light Fixture was purchased from Defendant through 1stoplighting.com on the Amazon.com online marketplace. See Exhibit 8. The order for the Infringing Light Fixture was fulfilled directly by the Defendant.

28. As recent as October of 2018, Defendant continued to distribute, sell and offer for sale the Infringing Light Fixtures through an expansive network of physical distributor locations across the United States as well as its Commercial Site and Online Distributors. A representative list of the Infringing Light Fixtures directly tied to the Seized Shipments and/or Defendant's continued sale of the illegal merchandise is attached as Exhibit 9.

29. On or about October 1, 2018, CSA Group's legal counsel issued written correspondence to the Defendant demanding that it immediately cease and desist in the importation, transportation, distribution, sale and offer for sale of the Infringing Light Fixtures. See Exhibit 10.

30. Notwithstanding CBP's seizure of the Seized Shipments and CSA Group's written demands, the Defendant continued to distribute, sell and offer for sale the Infringing Light Fixtures to the State of Florida and this District through its physical distributor network and online presence via the Commercial Site, social media, content-sharing websites, and Online Distributors through November 2018.

31. The Defendant is located in the State of Florida and has imported the Infringing Light Fixtures into this District, sold and distributed Infringing Light Fixtures to Florida residents through downstream lighting showrooms and electrical supply stores located in this District, and targeted online sales through the operation of a fully interactive website offering shipping and accepting online payment for delivery of the Infringing Light Fixtures to Florida and this District.

COUNT I
TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

33. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the registered CSA Marks in connection with the importation, transportation, distribution, sale and offer for sale of the Infringing Light Fixtures. The CSA Marks are highly distinctive marks. Consumers have come to expect the highest quality from merchandise sold or marketed under the CSA Marks.

34. Defendant has imported, transported, distributed, sold and offered for sale and are still importing, transporting, distributing, selling and offering for sale, the Infringing Light Fixtures without CSA Group's permission.

35. CSA Group is the exclusive owner of the CSA Marks. Plaintiff's United States Registrations for the CSA Marks are in full force and effect. Defendant has actual knowledge of Plaintiff's rights in the CSA Marks and is willfully infringing and

intentionally using counterfeits of the CSA Marks. Defendant's willful, intentional and unauthorized use of the CSA Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Light Fixtures among the general public in both the point of purchase and post-sale context.

36. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. Plaintiff has no adequate remedy at law, and if Defendant's actions are not enjoined, CSA Group will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CSA Marks.

38. The injuries and damages sustained by CSA Group have been directly and proximately caused by Defendant's wrongful manufacture, importation, sale, offer for sale, and distribution of the Infringing Light Fixtures.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

39. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

40. As a direct result of CSA Group's longstanding use, sales, advertising, and marketing, the CSA Marks have acquired a secondary and distinctive meaning among the public who have come to identify the CSA Marks with CSA Group and the products certified by CSA Group.

41. The Infringing Light Fixtures that the Defendant's imported, transported, distributed, sold and offered for sale exactly duplicate and appropriate

the CSA Marks, and deludes and confuses the public into believing that CSA Group examined, tested and certified for safety the Infringing Light Fixtures imported, transported, distributed, sold, and offered for sale by the Defendant.

42. Defendant, by misappropriating and using the likenesses of the CSA Marks in connection with the sale of merchandise, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of the Infringing Light Fixtures. Defendant has caused the Infringing Light Fixtures to enter into interstate commerce willfully with full knowledge of the falsity of the designation of their origin, description and representation in an effort to mislead the purchasing public into believing that the Infringing Light Fixtures are authorized by, emanate from, or are certified by CSA Group.

43. These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. The Defendant has obtained gains, profits and advantages as a result of their unlawful acts.

45. CSA Group has suffered monetary damages as a result of the Defendant's acts.

## COUNT III
### IMPORTATION OF GOODS BEARING INFRINGING MARKS

46. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

47. Defendant has imported Infringing Light Fixtures bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the CSA Marks in violation of 15 U.S.C. §1124.

48. Defendant has realized gains and profits from the importation of the Infringing Light Fixtures bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the CSA Marks.

49. Such conduct on the part of the Defendant has injured CSA Group in an amount to be determined at trial and caused and threatens to cause irreparable injury to CSA Group for which CSA Group has no adequate remedy at law.

## COUNT IV
## UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW

50. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

51. CSA Group has expended significant sums of money in advertising and marketing the CSA Marks, thereby creating a consumer demand for such products bearing the CSA Marks in Florida and elsewhere in the United States. Consequently, products bearing the CSA Marks have become widely known and accepted.

52. Defendant has distributed and sold the Infringing Light Fixtures bearing exact copies of the CSA Marks in Florida, thereby passing them off as products certified by CSA Group.

53. Defendant has knowingly and willfully appropriated the CSA Marks in an effort to create the impression that the Infringing Light Fixtures are certified by CSA Group and misappropriate the goodwill associated with CSA Group.

54. The Defendant's acts constitute unfair competition and will, unless enjoined by this Court, result in the destruction or dilution of the goodwill in the CSA Marks to the unjust enrichment of the Defendant.

55. The Infringing Light Fixtures sold by the Defendant are calculated and likely to deceive and mislead purchasers who buy them in the belief that they have been examined for safety and are certified by CSA Group.

56. The continued passing off by the Defendant of the Infringing Light Fixtures as if such products have been certified by CSA Group has caused and, unless restrained, will continue to cause serious and irreparable injury to CSA Group.

57. CSA Group has no adequate remedy at law and suffers irreparable harm as a result of the Defendant's acts.

58. CSA Group has suffered damages as a result of the Defendant's acts.

59. Defendant committed the alleged acts intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure CSA Group and its business.

## PRAYER FOR RELIEF

WHEREFORE, CSA Group prays for judgment against Defendant as follows:

1. That Defendant, its directors, officers, agents, employees, subsidiaries, affiliates, distributors, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminary, and permanently enjoined and restrained from:

   a. Further infringing the CSA Marks by importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of the Infringing Light Fixtures including or related merchandise bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the CSA Marks;

   b. Using any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the CSA Marks in the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation, or distribution of the Infringing Light Fixtures in such a fashion as to relate or connect, or tend to relate or connect, such products in any way to CSA Group;

   c. Making any statement or representation whatsoever, or using any false designation of origin of false description, or performing any act that can or is likely to lead the trade or public, or individual members thereof, to believe that the Infringing Light Fixtures are in any manner associated or connected with CSA

        Group, or have been examined or tested for safety or certified by CSA Group;

d.    Engaging in any other activity constituting unfair competition with CSA Group or constituting an infringement of any of the CSA Marks or CSA Group's rights in, or to use or exploit the CSA Marks, or constituting any dilution of CSA Group's name, reputation, or goodwill;

e.    Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (d);

f.    Secreting, destroying, altering, removing, or otherwise dealing with the Infringing Light Fixtures or any records that may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products that infringe any of the CSA Marks; and

g.    Aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of the CSA Marks.

2. Directing that Defendant deliver for destruction all Infringing Light Fixtures including labels, signs, prints, packages, dyes, wrappers, receptacles, and advertisements in their possession or under their control bearing any of the CSA Marks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, heat transfers, screens, matrices, and other means of making the same.

3. Directing each Defendant to report to this Court within thirty (30) days after injunctive relief is entered to show compliance with paragraphs 1 and 2 above.

4. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that CSA Group authorized or is related in any way to any products manufactured, sold, or otherwise circulated or promoted by Defendant.

5. Awarding to CSA Group from the Defendant, as a result of the Defendant's sale of the Infringing Light Fixtures, treble damages and the Defendant's profits upon an accounting, or statutory damages, should CSA Group opt for such relief consisting of $200,000.00 for each of the CSA Marks per type of good infringed upon by each Defendant, and to the extent this Court concludes such infringement was willful, $2,000,000.00 for each of the CSA Marks per type of good infringed by the Defendant pursuant to 15 U.S.C. §§ 1114, 1117 and 1125(a).

6. Awarding to CSA Group its reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117.

7. Awarding to CSA Group its costs in bringing this action.

8. Awarding punitive damages to CSA Group for the Defendant's willful acts of unfair competition under Florida's common law.

Dated this 6th day of March, 2019.

/s/ Michael W.O. Holihan
Michael W. O. Holihan
Florida Bar No.: 0782165
Kimberly A. Harchuck
Florida Bar No.: 0064852
Holihan Law
1101 North Lake Destiny Rd.
Suite 275
Maitland, Florida 32751
Telephone: (407) 660-8575
Fax: (407) 660-0510
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for Plaintiff